IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


RYAN D.,[1]                                                       No. 6:19-cv-00269-HZ

               Plaintiff,              OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

               Defendant.

Mark A. Manning
Katherine Eitenmiller
Harder Wells Baron & Manning, P.C.
474 Willamette Street
Eugene, OR 97401

     Attorneys for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Ryan Ta Lu
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Ryan D. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on November 23, 2015, alleging an onset date of January 12, 2014. Tr. 14, 203.[2] Plaintiff's date last insured ("DLI") is March 31, 2017. Tr. 16, 203. His application was denied initially and on reconsideration. Tr. 14.

On August 10, 2017, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 30. On March 7, 2018, the ALJ found Plaintiff not disabled. Tr. 25. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on diabetes, chronic back pain, Lyme disease, and Bells Palsy. Tr. 207. At the time of his alleged onset date, he was thirty-four years old. Tr. 207. He has a high school education and past relevant work experience as a tree trimmer; driver, sales route; surveillance system monitor; and commercial cleaner. Tr. 24.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

# SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date. Tr. 17. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments:

> [L]umbar post laminectomy syndrome; lumbar spondylosis; left shoulder impingement syndrome; diabetes mellitus type II controlled with treatment and without complications; neuropathy of the bilateral feet; unspecified mononeuropathy of the right lower extremity status post remote history of gunshot wound; obesity; anxiety; [and] depression.

Tr. 17. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) with the following limitations:

> The claimant is able to lift and/or carry twenty pounds occasionally and ten pounds frequently. He is able to stand for two hours total in an eight-hour workday with normal breaks. He is able to walk two hours total in an eight-hour workday with normal breaks and up to six blocks at one time. He is able to sit for six hours total in an eight-hour workday with normal breaks. He is able to perform work limited to reaching no higher than the shoulder level with the left upper extremity. He requires the ability to shift positions between sitting and standing to manage pain at will. He is able to perform work limited to occasionally climbing . . . ladders, ropes, or scaffolds. He is able to perform work limited to frequent balancing, stooping, kneeling, crouching, crawling, and/or climbing of stairs or ramps. He is able to perform work limited to occasional superficial interaction with the public.

Tr. 21. Within those limitations, the ALJ concluded that Plaintiff could perform his past relevant work as a surveillance system monitor. Tr. 24–25. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 25.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to identify legally sufficient bases supported by substantial evidence in the record to reject the medical opinion of Plaintiff's treating doctor and Plaintiff's subjective symptom testimony. Pl. Br. 13–21, ECF 10. Plaintiff asks the Court to exercise its discretion to credit the medical opinion and subjective symptom testimony as true and remand the case for an award of benefits. *Id*. at 14, 21.

I.      **Medical Opinion Evidence**

Plaintiff argues that the ALJ erred by according little weight to Dr. Nancy Keller's May 2017 and July 2017 opinions because the reasons the ALJ gave for discounting Dr. Keller's opinions are not legitimate or supported by substantial evidence in the record. Pl. Br. 14–15. Social Security law recognizes three types of physicians: (1) treating, (2) examining, and (3) non-examining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). More weight should typically be given to an examining physician than to a non-examining physician. *Id.* "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Id.* (quoting *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When determining how much weight to give a medical opinion, the ALJ should consider the nature and extent of the physician's examining or treating relationship with the claimant, supportability of the opinion, consistency with the record as a whole, the specialization of the physician, and other relevant factors. 20 C.F.R. § 404.1527(c).

   A.     **Dr. Keller's May 2017 Opinion**

Dr. Keller treated Plaintiff six or seven times between September 2016 and July 2017. Tr. 611. In May 2017, two months after Plaintiff's date last insured, Plaintiff visited Dr. Keller. Tr. 555. He reported issues with Prozac, controlling his blood sugar, and back pain. *Id.* Plaintiff described his history of back pain dating back to 2001 and described an inability to work full time after he lost his job in 2012 due to "cutbacks." *Id.* He also reported that he experienced pain after sitting for prolonged periods that he relieved by laying down. *Id.* Under the "back pain" section of her "Discussion/Summary," Dr. Keller noted that Plaintiff was permanently disabled and unable to work based on: (1) his back pain, which had not been relieved by his back surgery;

(2) his inability to work a full day; and (3) the likelihood that he would miss multiple days of work due to his pain. Tr. 558. Notably, this record does not attribute Plaintiff's disability to the other conditions Dr. Keller treated at that time, which included agitation, diabetes, hypertension, tachycardia, anxiety, and depression. *Id.* At the end of the visit, Dr. Keller provided Plaintiff with a note "to give to the children's services for child support" about his disability. *Id.*

The ALJ gave very little weight to Dr. Keller's opinion because it was not supported by the longitudinal record, "including Dr. Keller's own mostly normal examination findings." Tr. 24. The ALJ also explained that Dr. Keller's opinion was inconsistent with the records of Plaintiff's prior treating physician during the two years before Dr. Keller began treating Plaintiff and that the opinion "invades the area reserved to the Commissioner regarding a finding of disability[.]" *Id.*

Plaintiff argues that the ALJ erred by discounting Dr. Keller's May 2017 opinion because the reasons the ALJ identified are either not legitimate or not supported by substantial evidence in the record. Pl. Br. 14–15. Plaintiff argues that the longitudinal record demonstrates significant and persistent objective findings consistent with Dr. Keller's conclusion that Plaintiff is disabled. *Id*. In support of that argument, Plaintiff points to abnormal objective findings in the record that relate to Plaintiff's back and his other impairments, including his left shoulder, neck, leg, thoracic spine, tachycardia, and diaphoresis. Pl. Br. 15. However, Dr. Keller appeared to base her May 2017 opinion that Plaintiff is disabled only on his back pain. Tr. 558 (discussing Plaintiff's disability under the heading "Back pain").

The ALJ's conclusion that the longitudinal record did not support Dr. Keller's opinion that Plaintiff's back impairments were disabling is supported by substantial evidence in the record. *See, e.g.*, Tr. 522 (narcotic therapy is making his pain tolerable); Tr. 524 (reviewing

7 – OPINION & ORDER

normal cervical and thoracic spine MRIs and noting that left shoulder ultrasound did not identify a rotator cuff tear); Tr. 322 (continues to find his current medications helpful); Tr. 334 (heard a pop in his back while tearing carpet out of his home); Tr. 487 (back to work doing maintenance). More importantly, Dr. Keller herself found Plaintiff able to work with restrictions just two months later and described his neck and back pain as "probably muscular related and probably some arthritis," but "it does not look like anything surgical." Tr. 612. Plaintiff argues that the Court should reverse the ALJ's decision in favor of Dr. Keller's May 2017 opinion that Plaintiff is disabled without acknowledging that Dr. Keller's July 2017 opinion directly contradicts it. Where the evidence is susceptible to two rational interpretations, the Court must affirm. *Vasquez*, 572 F.3d at 591. As a result, the ALJ did not err by giving very little weight to Dr. Keller's opinion contained in her May 2017 treatment record. *See Turner v. Comm'r*, 613 F.3d 1217, 1224 (9th Cir. 2010) (holding that ALJ did not err by failing to consider a social worker's opinion issued after the plaintiff's date last insured regarding the plaintiff's ability to work).

The ALJ's conclusion that Dr. Keller's exam findings before May 2017 were "mostly normal," is not supported by substantial evidence in the record. Dr. Keller's records between September 2016 and May 2017 do not document any examinations of his back, shoulder, or legs. Tr. 563–81. At Plaintiff's first visit with Dr. Keller, he asked to be weaned off his pain medications. Tr. 576. After his initial visit with Dr. Keller in September 2016, Dr. Keller saw Plaintiff three other times before his date last insured. Tr. 563–75. Dr. Keller's treatment of Plaintiff focused primarily on managing his anxiety, depression, elevated heart rate, and diabetes with few references to his back pain and no documented examinations of his back. *See* Tr. 563 (diabetes and social anxiety); Tr. 567 (diabetes); Tr. 572 (back pain, diabetes, hemorrhoids). Dr. Keller did, however, continue to manage weaning him from narcotic pain medications during

that time. As a result, the ALJ's determination that Dr. Keller's examinations of Plaintiff were "mostly normal" is not supported by substantial evidence in the record.

Plaintiff also contends that the ALJ erred by discounting Dr. Keller's opinion because Dr. Amavisca, Plaintiff's primary provider before he initiated care with Dr. Keller, had found no work limitations during the entire relevant period. Pl. Br. 15. In drawing that conclusion, the ALJ cited a work excuse note completed by Dr. Amavisca that indicated that Plaintiff could return to work with no restrictions on July 22, 2013, after a nineteen-day absence. Tr. 24 (citing Tr. 468). Plaintiff argues that the ALJ erred by relying on a record that Dr. Amavisca created before Plaintiff's date of onset. Pl. Br. 15. The Court disagrees. The July 2013 release to work establishes that as of July 2013, Dr. Amavisca did not believe that Plaintiff had any limitations from performing full-duty work. Because Dr. Amavisca's records between Plaintiff's date of onset in January 2014 through Dr. Amavisca's last visit with Plaintiff in June 2016 impose no limitations on Plaintiff's ability to work, Tr. 347–401, 498–519, the ALJ's conclusion is supported by substantial evidence. As a result, the ALJ did not err by discounting Dr. Keller's opinion based on Dr. Amavisca's conflicting findings.

Plaintiff also argues that the ALJ improperly discounted Dr. Keller's May 2017 opinion that Plaintiff is disabled on the ground that the disability determination is an issue reserved for the Commissioner. Pl. Br. 16. Plaintiff asserts that although it is a correct statement of the law, it is not a specific and legitimate reason to reject a treating medical opinion. *Id.* Although that is true, *see Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012), the ALJ provided the other legally sufficient reasons identified above to give very little weight to Dr. Keller's opinion. As a result, the ALJ's finding must be affirmed.

///

### B. Dr. Keller's July 2017 Opinion

In July 2017, Dr. Keller wrote a more detailed opinion outlining Plaintiff's ability to work. Tr. 611. Dr. Keller noted that Plaintiff has chronic low back pain that has not been relieved with surgery, injections, and extensive narcotic medication trials. *Id.* She explained that Plaintiff has anxiety, depression, irritability, insomnia, and social phobia. *Id.* Dr. Keller also noted that Plaintiff has left shoulder pain, neck pain, a chronic thoracic spine strain, and Bells Palsy, a condition that results in one-sided facial paralysis. *Id.* Dr. Keller explained that Plaintiff also has neuropathy which causes his feet to go numb. She noted that Plaintiff has sinus tachycardia and that she had observed him become diaphoretic in her presence before. *Id.* at 611–12.

Dr. Keller opined that Plaintiff can walk about six blocks, sit for up to two hours with breaks, and stand and walk for an hour at a time with frequent rest periods. Tr. 612. Dr. Keller found that Plaintiff would need multiple unscheduled breaks during an eight-hour period, require the ability to shift positions, "probably have to lay down to get a break from the pain," lift no more than ten pounds, and not reach with his left arm or look overhead. *Id.* Dr. Keller also noted that Plaintiff would have difficulty working with the public due to his social phobia, anxiety, and depression. *Id.* at 613. As discussed above, contrary to her May 2017 opinion, Dr. Keller no longer characterized Plaintiff as "permanently disabled." *Id.*

The ALJ gave "some weight" to Dr. Keller's July 2017 opinion. Tr. 23. The ALJ identified several reasons that she discounted Dr. Keller's July 2017 opinion: (1) Dr. Keller saw Plaintiff only five times during the period at issue; (2) Dr. Keller based her opinion largely on Plaintiff's subjective reports rather than objective clinical findings; (3) the opinion was not consistent with the opinions of Plaintiff's pain specialists or Plaintiff's prior primary doctor; (4) Dr. Keller's assessed limitations were inconsistent with her own treatment notes that show few

objective findings to support the extreme limitations she identified; and (5) Plaintiff reported that he was doing reasonably well with activities while on narcotic medications in 2014 and 2015. Tr. 23.

Plaintiff first argues that the ALJ erred because he found that Dr. Keller saw Plaintiff only five times when, in fact, Dr. Keller saw Plaintiff seven times in a ten-month period before issuing her opinion. Pl. Br. 17. Plaintiff argues that by failing to explain why that level of treatment was insufficient for Dr. Keller to substantiate her conclusions, the ALJ erred. Plaintiff is incorrect. The length of treatment and frequency of examination are relevant factors for an ALJ to consider when determining how much weight to give a medical opinion. 20 C.F.R. § 404.1527(c)(2)(i). Plaintiff's further argument that the longitudinal record "which, as [Plaintiff's] primary care provider, Dr. Keller would have had access to and considered in assessing [Plaintiff's] functional limitations", Pl. Br. 17, is speculative and does not warrant reversal of the ALJ's decision.

Plaintiff next argues that the ALJ erred by discounting Dr. Keller's opinion because the ALJ did not explain how Dr. Keller's opinion conflicted with the reports of Plaintiff's pain specialists or prior primary provider. Pl. Br. 17. However, that argument misstates the Commissioner's burden. The ALJ must offer specific and legitimate reasons supported by substantial evidence to discount a treating doctor's opinion that is contradicted by another doctor's opinion. *Garrison*, 759 F.3d at 1012 (citation omitted). As explained above, the ALJ noted that Dr. Keller's opinion conflicted with the findings of Plaintiff's prior primary provider, Dr. Amavisca, because Dr. Amavisca did not impose any limitations on Plaintiff's ability to work after his date of onset. *See* Tr. 24. As for Plaintiff's pain specialists, the ALJ explained that Plaintiff had "told the pain treatment sources he was doing reasonably well with activities while

on the medication. Tr. 23. The ALJ offered a specific and legitimate reason to discount Dr. Keller's opinion—that Dr. Keller's opinion contradicted the records of Plaintiff's prior primary physician and pain specialists—and Plaintiff does not argue that the ALJ's decision on that point was not supported by substantial evidence, except to point out that if the ALJ based that finding on Dr. Amavisca's 2013 work release, that release concerned the period before Plaintiff's onset of disability and was not a reasonable basis for rejecting Dr. Keller's opinion. Pl. Br. 17. Because the Court finds that the ALJ provided a specific and legitimate reason to discount Dr. Keller's opinion and Plaintiff does not argue that it was unsupported by substantial evidence, the ALJ did not err.

Next, Plaintiff argues that the ALJ erred by discounting Dr. Keller's opinion because Plaintiff told his pain specialists that he did reasonably well with activities while on opiate medications in 2014 and 2015. Pl. Br. 17–18 (citing Tr. 23). Plaintiff argues that, although he had received some relief from pain medications, he was eventually weaned from them because they caused significant side effects and were ineffective at managing his pain long-term. Pl. Br. 18. After weaning from the medications, Plaintiff reported that he was "miserable with pain." *Id.* (citing Tr. 572). The Court agrees with Plaintiff that the ALJ's conclusion that Plaintiff's pain was managed with medications is not supported by substantial evidence. First, any benefit of pain medications Plaintiff enjoyed in 2014 and 2015 was short-lived. The doctor who prescribed pain medications to Plaintiff remarked that Plaintiff "has, over time, proven that every opioid is either intolerable or ineffective and I am concerned that opioids will do more harm than good. Many patients become over sensitized to pain due to opioid use and I find that Naltrexone therapy can help with this issue and is ordered." Tr. 538. Two months later, Plaintiff began to wean from his pain medications. Tr. 573 Second, the record establishes that in 2014 and 2015,

despite "doing reasonably well," Plaintiff rated his level of physical functioning 50/100, his energy and fatigue 5/100, his pain 50/100, and his general health 55/100. Tr. 319. He also rated the interference of his pain with his level of activity 4/5. Tr. 322. Although it is accurate that Plaintiff's pain specialist remarked that Plaintiff had done reasonably well with activities on pain medications, the pain treatment records are rife with self-evaluations in which Plaintiff rated his overall level of functioning quite low. Thus, the ALJ's conclusion is not supported by substantial evidence. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (ALJ decision that relied on isolated instances of improvement to discount treating physician's testimony—when the weight of the evidence did not reflect improvement—was not supported by substantial evidence).

Finally, the ALJ remarked while discussing Dr. Keller's opinion that Plaintiff had suffered a gunshot wound to his right lower extremity and that Dr. Keller's opinion noted the gunshot wound was in his left lower extremity. The ALJ pointed out that mistake in his discussion of why he discounted Dr. Keller's opinion, but did not explain why that mistake undermined Dr. Keller's opinion. Tr. 23. As a result, that was not a specific and legitimate reason to discount Dr. Keller's testimony. Because the ALJ provided other legally sufficient reasons to discount Dr. Keller's testimony, the errors the Court has identified were harmless. *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006) (An error is harmless if it is inconsequential to the non-disability determination.).

## II.     Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons

are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted), *superseded by regulation on other grounds as stated in Thomas v. Saul*, 830 F. App'x 196, 198 (9th Cir. 2020).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff argues that the ALJ erred when he discounted Plaintiff's subjective symptom testimony for the following reasons: (1) the objective medical evidence was inconsistent with the degree of impairment Plaintiff alleged; (2) Plaintiff had worked in the past despite his impairments; and (3) Plaintiff's testimony contradicted his reports to medical providers.

First, Plaintiff argues that the ALJ erred by finding that the degree of impairment alleged by Plaintiff was inconsistent with the objective medical evidence because Plaintiff has the burden to show only that his impairment could cause some degree of symptoms. Pl. Br. 20. The ALJ must consider all symptoms "and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). An ALJ may reject a plaintiff's subjective symptom testimony that does "not comport with objective evidence in [his] medical record." *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009). The ALJ rejected Plaintiff's testimony about the limiting effects of his symptoms because they were inconsistent with the objective medical findings. Tr. 22. However, the ALJ did not identify any actual inconsistency. Tr. 22. The ALJ noted that Plaintiff conceded that he may be able to relieve his back pain with frequent position changes rather than lying down. *Id.* The ALJ also noted that Plaintiff's gunshot wound and lumbar impairments developed in 2000, and he had been able to work for years after that until the relevant period. *Id.* The ALJ remarked that Plaintiff's "subjective complaints alleging limitations beyond those described in the residual functional capacity are not consistent with the longitudinal objective medical evidence." *Id.* None of those statements demonstrate any inconsistency between the intensity, persistence, and limiting effects of Plaintiff's alleged symptoms and the objective medical evidence. Accordingly, the ALJ's stated reason is not supported by substantial evidence.

Second, the ALJ rejected Plaintiff's subjective symptom testimony because Plaintiff had been able to work in the past, including after his alleged date of onset, with the same impairments he alleges form the basis for his disability. Tr. 22. In doing so, the ALJ emphasized that Plaintiff worked for one week in 2014 and only discontinued that work because it was temporary, not because his impairments prevented him from performing the job. *Id.* Plaintiff argues that one week of work, which was not substantial gainful activity, is not a clear and convincing reason to reject Plaintiff's testimony and does not establish that he can sustain full-time, competitive work. Pl. Br. 20. The Court agrees. Although Plaintiff worked temporarily for a week during 2014, the record contains no evidence of the work tasks he performed, the level of physical exertion the job required, whether Plaintiff required breaks and other accommodations to perform the work, whether he would have been able to continue the work if the position was long-term or permanent, or any other information that undermines Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms. As a result, Plaintiff's performance of a week of work in 2014 was not a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

Finally, Plaintiff argues that the ALJ erred by rejecting Plaintiff's subjective symptom testimony because Plaintiff made inconsistent statements during his disability claim. The ALJ highlighted a number of statements Plaintiff made during his hearing testimony that contradicted statements he made to his treating physicians and in his disability application concerning topics other than the intensity, persistence, and limiting effects of his symptoms. Tr. 22–23. The statements identified by the ALJ included Plaintiff's admission that he performed work in 2014 that he failed to report in his application, his statement about whether he went to the hospital immediately after his 2013 car accident or twelve days later, his statements about the reason he

did not complete physical therapy, and whether he received neck injections following his 2013 car accident. Tr. 22–23. After describing the inconsistent statements, the ALJ concluded that Plaintiff's "inconsistent statements and symptom magnification lessen the reliability of his limitation allegations." The ALJ did not explain what he meant by "symptom magnification" or explain how those statements related to the intensity, persistence, and limiting effects of his symptoms. The ALJ's decision makes clear that the ALJ rejected Plaintiff's subjective symptom testimony because the ALJ found Plaintiff to be untruthful. By doing so, the ALJ erred. *See* SSR 16-3p, 2017 WL 5180304, at *2, 11 ("subjective symptom testimony is not an examination of an individual's character . . . [t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person"); *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (the purpose of the ALJ's evaluation of subjective symptom testimony evaluation is "not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness."). Consequently, the ALJ failed to identify any legally sufficient reasons to reject Plaintiff's subjective symptom testimony.

### III. Credit as True

Plaintiff cursorily argues that the Court should credit Plaintiff's testimony as true and remand for an immediate payment of benefits. Pl. Br. 21. The decision whether to remand for further proceedings or for immediate payment of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (9th Cir. 2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second,

the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency.) (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988)). Even if those requirements have been met, the district court retains the flexibility to remand the case for further proceedings, particularly when the record as a whole creates serious doubts that the claimant is disabled. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

The Court finds that the ordinary remand rule is the proper remedy in this case. Although the ALJ provided no legally sufficient reason to reject Plaintiff's subjective symptom testimony, accepting it as true does not establish that Plaintiff is disabled in light of the medical evidence and the RFC the ALJ developed that incorporated nearly all the limitations identified by both Plaintiff and Dr. Keller. Accordingly, the Court remands this case for further administrative proceedings so that the ALJ can determine in the first instance whether and to what extent Plaintiff's subjective symptom testimony alters the RFC and the ALJ's non-disability determination.

///
///
///
///
///

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

DATED:＿＿May 28, 2021＿＿＿＿.

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
MARCO A. HERNÁNDEZ
United States District Judge